IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **WILLIAM LANE RAWLS,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:10-CV-71-BJ** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| **DEFENDANT.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff William Rawls ("Rawls") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claims for disability insurance benefits under Title

II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act

("SSA"). For the reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is

**AFFIRMED**.

## I. STATEMENT OF THE CASE

On May 18, 2006,[1] Rawls applied for disability insurance and SSI benefits alleging that

he had become disabled beginning on February 11, 2006. (Transcript ("Tr.") 10; *see* Tr. 118-

22.) His applications were denied initially and on reconsideration. (Tr. 10, 64-71, 75-80.) The

ALJ held a hearing on July 9, 2008 and issued a decision on October 7, 2008 that Rawls was not

---

[1] The Court notes that the "Application Summary for Disability Insurance Benefits" actually states, "On June 14, 2006, we talked with you and completed your application for SOCIAL SECURITY BENEFITS." (Tr. 118.) In addition, the "Application Summary for Supplemental Security Income" states, "On July 11, 2006, you applied for Supplemental Security Income . . . ." (Tr. 120.)

disabled.[2] (Tr. 10, 7-18.) Rawls filed a written request for review (Tr. 6), and the Appeals Council denied Rawls' request for review (Tr. 1-5), leaving the ALJ's decision to stand as the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or

---

[2] The ALJ appears to have actually issued two decisions, one dated October 1, 2008 (Tr. 22-30) and one dated October 7, 2008 (Tr. 10-18). The decisions appear to be identical except for the addition of two paragraphs in the decision dated October 7, 2008. (*Cf.* Tr. 16 *with* Tr. 28.) Because the October 7, 2008 decision is the most recently issued ALJ decision and was the decision reviewed by the Appeals Council (*see* Tr. 1), the Court will consider this decision to be the final decision of the Commissioner that is to be reviewed.

combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor

3

substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

Rawls presents the following issues to the Court:

1. Whether substantial evidence supports the ALJ's finding at Step Three that Rawls' severe impairments of depression and anxiety disorder did not meet or equal any impairment in the Listing;

2. Whether the ALJ followed the "special technique" required pursuant to 20 C.F.R. § 404.1520a in assessing Rawls' mental impairments; and

3. Whether the ALJ properly weighed the opinions of Rawls' treating physicians.

## IV. ADMINISTRATIVE RECORD

### A. Relevant Treatment History[3]

Rawls received treatment through the John Peter Smith ("JPS") Health Center for a variety of impairments, including depression, from approximately December 2002 through September 2008. (Tr. 232-302, 372-412, 451-68, 545-55.) During this time, he was often treated by Chi Ha Vu, M.D. ("Vu"). (*See, e.g.,* Tr. 232-74, 372-412, 461-68, 545-55.) Rawls sometimes complained during his treatment that he was experiencing a variety of symptoms related to his depression, including feeling tired, having difficulty sleeping, and the inability to concentrate. (*See, e.g.,* Tr. 236-37 (July 2006); 238-39 (June 2006); 263-64 (February 2005); 265-66 (October 2003); 267-77 (August 2003) At other times, the records indicate that Rawls was feeling better, doing well on his medications, sleeping and eating well, not feeling sad, and

---

[3] The Court will only review the treatment history that is directly relevant to the issues before the Court.

4

not having crying episodes. (*See e.g.*, Tr. 255-56 (October 2005); 259-60 (September 2005); 261-62 (April 2005); 265-66 (October 2003); 269-70 (April 2003); 271-72 (February 2003); Tr. 393-94 (May 2006); Tr. 402-03 (January 2006); Tr. 467-68 (March 2007).) In December 2007, Rawls reported that he felt like he had agoraphobia[4] and mainly stayed at home. (Tr. 459.)

On October 2, 2006, Rawls underwent a psychological consultative examination with State Agency Medical Consultant ("SAMC") Gerald Stephenson, Ph.D. ("Stephenson"). (Tr. 315-20.) During the examination, Stephenson made the following general observations about Rawls:

> He was 5'8" tall and weighed about 124 pounds. His face was thin and pale. He was dressed in a T-shirt and jeans with one knee out. His hair was long and askew. His nails were short and appeared to be bitten. He was observed to be right-handed. His gait and bearing were balanced. His fine motor control appeared to be fair to poor. His speech was clear and understandable. He appeared to be unwell—fatigued and lethargic during the interview.

(Tr. 315.) Stephenson noted that Rawls reported the following: (1) he was depressed, anxious, and panicked if he left the house for very long; (2) he had difficulty focusing his attention, low energy, and deficits in his short-term memory; (3) he was depressed on most days and tended to be isolated; (4) he had been losing weight; (5) he had been experiencing anhedonia;[5] (6) he liked to go to school and AA meetings and he did have some friends that he met for coffee; (7) he had problems eating and sleeping; and (8) he tried to do some household chores, water the plants, and help his mother. (Tr. 316-17.) Stephenson opined, based on records he reviewed and his

---

[4] Agoraphobia is the "intense, irrational fear of open spaces, characterized by marked fear of venturing out alone or of being in public places where escape would be difficult or help might be unavailable." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 41 (31st ed. 2007).

[5] Anhedonia is the "total loss of feeling of pleasure in acts that normally give pleasure." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 92 (31st ed. 2007).

interview with Rawls, that Rawls appeared to "have symptoms of major depressive disorder, recurrent, without psychotic features" and "have a panic disorder with developing agoraphobia" even though he still managed to meet friends at a coffee house and remain active in Alcoholics Anonymous ("AA"). (Tr. 320.) Stephenson also stated that Rawls would "experience subjective emotional stress in situations many persons would find innocuous." (Tr. 320) Stephenson further opined that Rawls' prognosis was "guarded" and his "condition appears to be chronic and long-standing." (Tr. 320.)

Thereafter, in a Psychiatric Review Technique Form ("PRTF") dated October 12, 2006, SAMC Robert White, Ph.D. ("White"), opined that Rawls suffered from an affective disorder pursuant to Section 12.04 of the Listing that was characterized by anhedonia, sleep disturbance, decreased energy, and difficulty concentrating or thinking. (Tr. 324; *see* Tr. 321-34.) White further opined that, pursuant to the "B" criteria of the Listing, Rawls was mildly restricted in his activities of daily living; had mild difficulties in maintaining social functioning; had moderate difficulties in maintaining concentration, persistence, or pace; and had one or two episodes of decompensation of extended duration. (Tr. 331.) White further indicated that the evidence did not establish the presence of the "C" criteria of the Listing. (Tr. 332.)

In a Mental Residual Functional Capacity Assessment ("MRFC"), also dated October 12, 2006, White opined that Rawls was moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral

6

extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (Tr. 335-36; *see* Tr. 335-38.) In the section titled "Functional Capacity Assessment," White stated that Rawls "[r]etains the ability to understand, remember and carry out detailed but not complex instructions, make basic decisions, concentrate for extended periods, and interact with others and respond to changes in the work setting; overall capable of detailed but not complex tasks." (Tr. 337.)

From approximately February 2007 through May 2008, Rawls was treated at the JPS NE Clinic and often seen by Lori Shahidi, D.O. (*See* Tr. 470-513.) Rawls was diagnosed with recurrent, major depressive disorder and panic disorder with agoraphobia. (*Id.*; *see, e.g.*, Tr. 483-84, 488, 492, 508.) During this treatment period, Rawls depressive symptoms increased and decreased and he reported having recurrent anxiety attacks. (*See, e.g.*, Tr. 472, 479, 482-85, 496-97, 500-501, 504-05, 509, 511.) In December 2007, treatment notes stated, "P[atien]t able to go [to] clubs for socializing but says won't be able to work." (Tr. 485; *see also* Tr. 489-90.) In May 2008, Rawls reported that he went to an AA convention over the weekend in Dallas. (Tr. 472.)

In a Medical Source Statement dated July 1, 2008, Vu opined that Rawls had an unlimited (very good) or good ability to do the following: (1) follow work rules; (2) relate to co-workers; (3) deal with the public; (4) use judgment; (5) interact with supervisors; (6) function independently; (7) understand, remember, and carry out simple and detailed but not complex instructions; (8) maintain personal appearance; and (9) demonstrate reliability. (Tr. 516-17.) Vu

7

further indicated that Rawls had a "fair"[6] ability to do the following: (1) deal with work stresses; (2) maintain attention and concentration; (3) understand, remember, and carry out complex job instructions; (4) behave in an emotionally stable manner; and (5) relate predictably in social situations. (Tr. 516-17.) Vu indicated his opinions were based, *inter alia*, on Rawls' diagnosis of depression. (Tr. 516.) Vu further stated that Rawls' limitations existed as early as August 2006 and would be expected to last for twelve months or longer. (Tr. 518.)

Helene Alphonso, D.O. ("Alphonso") also treated Rawls at the JPS Health Network from approximately September 10, 2008 through June 25, 2009. (*See*, Tr. 580-601.) In a "Medical Assessment of Ability to Do Work-Related Activities (Mental)" ("Medical Assessment") dated September 10, 2008, Alphonso opined that Rawls had substantial loss of ability to perform the following activities in regular, competitive employment and could do so only in a sheltered work setting: (1) apply commonsense understanding to carry out simple one or two-step instructions; (2) maintain attention/stay on task for an extended period; (3) perform at a consistent pace without an unreasonable number and length of rest periods or breaks; (4) act appropriately with the general public; (5) make simple work-related decisions; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and (8) finish a normal work week without interruption from psychologically based symptoms. (Tr. 565-66.) Alphonso further stated that Rawls had a complete loss of ability to perform the following activities in regular, competitive employment and in a sheltered work setting: (1) apply commonsense understanding

---

[6] "Fair" is defined in the Medical Source Statement as the "[a]bility to function in this area is seriously limited but not precluded (i.e. consistent with sheltered workshop but not competitive job placement.)" (Tr. 516.)

to carry out detailed but uninvolved written or oral instructions; (2) demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; (3) maintain concentration for an extended period; (4) behave in an emotionally stable manner; (5) respond appropriately to changes in a routine work setting; and (6) cope with normal work stresses (even those inherit in low stress jobs) without exacerbating pathologically based symptoms. (Tr. 565-66.)

In the Medical Assessment, Alphonso diagnosed Rawls with panic disorder and agoraphobia and indicated that Rawls suffered from appetite and sleep disturbance; low energy; chronic disturbance of mood; difficulty thinking and confusion; flight of ideas; racing thoughts, and chronic depression. (Tr. 566.) Alphonso also opined that even a minimal increase in mental demands or change in the environment would be predicted to cause Rawls to decompensate. (*Id.*)

In a Medical Release dated January 14, 2009, Alphonso further opined that Rawls was unable to work in any capacity because he suffered from severe panic disorder with agoraphobia and recurrent major depressive disorder. (Tr. 618.)

### B. ALJ Decision

In her October 7, 2008 decision, the ALJ noted that Rawls met the disability insured status requirements through December 31, 2010. (Tr. 12.) She stated that Rawls had not engaged in any substantial gainful activity since February 11, 2006, his alleged onset date of disability. (*Id.*) The ALJ further found that Rawls had the severe impairments of pancreatitis, asthma, major depressive disorder, and anxiety disorder with agoraphobia. (Tr. 12.)

9

Next, the ALJ held that none of Rawls' impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 13.) Specifically, the ALJ stated:

> In accordance with Audler v. Astrue, 2007 WL 2745001 (5th Cir. Sept. 21, 2007), the undersigned has considered the impairments listed in Appendix 1 to Subpart P of Part 404 of the Regulations and finds that claimant's impairments do not singularly or in combination meet or medically equal the required criteria for any of the impairments listed under section 3.01, Category of Impairments, Respiratory System; section 5.01, Category of Impairments, Digestive System; section 12.01, Category of Impairments, Mental Disorders or any other listed impairment. The signs, symptoms and history of treatment presented in the evidence of record are inconsistent with any impairment(s) of listing-level of severity.

(Tr. 13.) As to Rawls' residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours in an eight-hour workday, sit six hours in an eight-hour workday and push and pull in the amount of weight given. Claimant must avoid concentrated exposure to fumes, chemicals, and smoke and in spite of his mental impairments could understand, remember and carry out detailed, but not complex instructions and could interact on an incidental basis with coworkers and the general public.

(Tr. 13.) In making this determination, the ALJ went through the evidence in the record, stating, *inter alia*:

> At the hearing, claimant testified that he was unable to work due to a combination of impairments including pancreatitis, asthma, and agoraphobia with depression and anxiety. Claimant stated that he was incapable of leaving his home due to agoraphobia and had a fear of even running errands. Claimant's allegations are not supported by the evidence of record, however.

> Despite his allegedly disabling combination of impairments, claimant testified that he took care of his mother (with whom he lived) after she broke her hip. He indicated that he cleaned house, prepared meals and shopped for groceries. Claimant also testified that he liked to garden, but stipulated that his backyard "was a safe place to be" like his home. The record further indicates that claimant attends AA meetings (including an overnight weekend AA convention . . .), has gone out to dinner and the theatre, drives a car, visits with friends and stays

10

in touch with friends via email. By his own description and through that reflected in the record, claimant's activities of daily living are clearly not consistent with a disabling physical or mental impairment.

. . . .

Primarily, the record documents treatment for major depression and anxiety disorder. On consultative examination by Gerald Stephenson, Ph.D., in October of 2006, claimant complained that he experienced panic if he was out of his home for a long period of time. Claimant also described lack of concentration, depression, worry, low energy and anhedonia. However, claimant stated that he liked meeting friends for coffee and attending AA meetings and admitted that he was not seeing a psychiatrist, but only receiving psychotropic medications from his treating physician. Claimant reported multiple hospitalizations in the past for the purpose of substance abuse detoxification and treatment and not psychiatric illness.

On examination, claimant appeared thin and "unwell" according to the examiner. Claimant's mood was dysphoric and his affect consistent and he exhibited deficits in memory and concentration. Claimant's insight and judgment were intact, however. Based on review of claimant's records and clinical examination findings, Dr. Stephenson rendered a diagnosis of major depressive disorder, recurrent without psychotic features and a provisional diagnosis of panic disorder with developing agoraphobia. Despite this condition, however, Dr. Stephenson noted that claimant somehow managed to meet friends at a coffee house and remain active in Alcoholics Anonymous.

Progress notes indicated that claimant has experienced intermittent symptoms of depression and anxiety but that these conditions have responded to treatment with medication. The record also documents the development of panic attacks and agoraphobia although claimant's allegations that he is unable to leave his home are not borne out by the evidence. In September of 2007, his attending JPS psychiatrist summarized claimant as an individual treated for major depressive disorder and panic disorder with agoraphobia and asserted that "panic remains disabling".

On examination at the time, however, claimant's general behavior was appropriate and normal; his mood cooperative; his speech rate and volume normal; his mood anxious and affect appropriate; his concentration good and memory intact; his intellectual faculties without deficit; his thought processes well organized and his insight and judgment good. Claimant was noted to have symptoms (not signs) of anxiety at a level of 5 indicating moderate severity.

Pursuant to 20 CFR 404.1508 and Social Security Ruling 96-4p, a medically determinable impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by objective evidence from an acceptable medical source (i.e., signs, symptoms and laboratory findings and/or results of diagnostic studies). A physical or mental impairment cannot be established in the absence of documented medical abnormalities and under no circumstances may the existence of a medically determinable impairment be established on the basis of **symptoms** alone. The objective examination findings or "signs" documented in the foregoing progress note dated in September of 2007 are essentially normal and do not demonstrate a disabling level of panic regardless of the severity of claimant's symptomology.

Furthermore, progress notes from JPS dated in December of 2007 indicate positive findings of "learned helplessness." At this time, forms were filled out for discharge of claimant's student loans (on the basis of disability), but the attending physician stated that claimant "has not tried to work in years and has no motivation to get a job although he is able to go to clubs for socializing but says he won't be able to work." Considering these facts, the medical source statement contained in [the Loan Discharge Application] is given no weight by the undersigned. For the same reasons and based on the same evidence, claimant is considered less than fully credible.

(Tr. 14-15 (internal citations omitted) (emphasis in original).)

As to Rawls' treating physicians, the ALJ stated:

Counsel submitted a medical source statement completed by Dr. Chi Vu, a family practitioner at JPS in July of 2008. Therein, Dr. Vu opined that claimant would have work-related limitations (his ability was described as "fair") in the areas of dealing with work stress, maintaining attention/concentration, behaving in an emotionally stable manner, and relating predictably in social situations. The undersigned finds however that even with moderate limitations in these areas, claimant would be capable of understanding, remembering and carrying out detailed but not complex instructions in jobs not requiring more than incidental interpersonal contact as outlined in the residual functional capacity assessment contained herein. This is further supported by Dr. Vu's opinion that claimant would have good to very good ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, function independently, understand, remember and carry out both simple and detailed (but not complex) job instructions, maintain personal appearance and demonstrate reliability.

Claimant's ability to perform detailed, but not complex, work with limited interpersonal contact is also supported by the global assessment of functioning (GAF)[7] score of 60[8] . . . .

Two months after the hearing, another medical source statement was submitted by counsel, this time completed by Helene Alphonse [sic], DO.[9] In the assessment, Dr. Alphonse [sic] opined that claimant would have a "substantial loss of ability" or even a "complete loss of ability" to perform the enumerated mental demands of competitive work activity. She based this opinion on panic disorder with agoraphobia allegedly characterized by appetite disturbance, sleep disturbance, low energy, chronic disturbance of mood, difficulty thinking/confusion, flight of ideas, racing thoughts and chronic depression.

There is however no evidence of a longitudinal (or any) treatment history of the claimant by Dr. Alphonse [sic]. Furthermore, there is no indication of Dr. Alphonse's [sic] professional qualifications or the bases for her opinions. Few of the symptoms and signs she ascribes are reflected in the evidence. Moreover, Dr. Alphonse [sic] assigned a global assessment of functioning (GAF) score of 60. In accordance with the Diagnostic and Statistical Manual of Mental Disorders, a GAF score of 60 denotes mild to moderate psychiatric symptoms only and is certainly not consistent with a substantial or complete loss of ability to perform the mental demands of work activity. Given all of these factors, the opinion of Dr. Alphonse [sic] is accorded no weight by the undersigned . . . .

. . . .

As for the opinion evidence, the undersigned has considered the opinion of the state agency medical consultants in accordance with Social Security Ruling 96-6p and concurs with their assessment . . . that claimant is capable of performing detailed but not complex tasks. This opinion is consistent also with that of treating physician Chi Vu, M.D., in Exhibit 13F. In reference to the psychiatric review technique form, specifically the "B" criteria, the undersigned finds that claimant's symptomatology has resulted in mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate

---

[7] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (DSM-IV).

[8] A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

[9] The Court notes that the correct spelling appears to be "**Alphonso**." (*See, e.g.*, Tr. 613.)

13

deficiencies in concentration, persistence, and pace, and no episodes of decompensation.

(Tr. 15-17 (internal citations omitted).)

The ALJ opined, based on her RFC assessment, that Rawls was not able to perform his past relevant work. (Tr. 17.) However, the ALJ found that there were a significant number of jobs in the national economy that Rawls could perform; thus, he was not disabled. (Tr. 17-18.)

## V. DISCUSSION

### A. <u>Step Three: Whether Mental Impairments Met or Equaled a Listing</u>

Rawls argues that the ALJ erred in finding at Step Three that none of Rawls' mental impairments met or equaled the requirements of Section 12.04 or 12.06 of the Listing because "substantial evidence demonstrates that his severe mental impairments do meet those Listings." (Pl.'s Br. at 11; *see also* Pl's Reply Br. at 1-4.)[10] To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing. As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled at Step Three. SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996); *see also* 20 C.F.R. § 404.1526(c) (stating that opinions that medical consultants designated by the Commissioner offer on the issue of whether an impairment meets or equals the requirements for a listed impairment

---

[10] The Court notes that Rawls filed his original brief on August 19, 2010 and then later that same day filed an amended brief. Any references to Rawls' brief are to the amended brief.

will be considered); 20 C.F.R. §§ 404.1527(e), 416.926(c) & (e), 416.927(e). Medical equivalence must be based on medical findings that are supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1526, 416.926.

In this case, the ALJ found at Step Three that Rawls' impairments did not meet or equal the required criteria for any of the impairments listed under Sections 3.01, 5.01 or 12.01 or any other section in the Listing. (Tr. 13.) In making this finding, the ALJ summarily stated that the "signs, symptoms and history of treatment presented in the evidence of record are inconsistent with any impairment(s) of listing-level of severity." (*Id.*) The ALJ, however, failed to identify the specific evidence on which she relied for this conclusion at Step Three.

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N. D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). However, even assuming the ALJ erred at Step Three by failing to provide reasons for her adverse findings, remand would be necessary only if the claimant's substantial rights have been affected. *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

15

To meet the Listing under Section 12.04, which deals with affective disorders, Rawls

must show, as relevant here, that the requirements in both parts A and B, listed below, are

satisfied:

> A. Medically documented persistence, either continuous or intermittent, of one
>    of the following:
>    1. Depressive syndrome characterized by at least four of the following:
>       a. Anhedonia or pervasive loss of interest in almost all activities;
>          or
>       b. Appetite disturbance with change in weight; or
>       c. Sleep disturbance; or
>       d. Psychomotor agitation or retardation; or
>       e. Decreased energy; or
>       f. Feelings of guilt or worthlessness; or
>       g. Difficulty concentrating or thinking; or
>       h. Thoughts of suicide; or
>       i. Hallucinations, delusions, or paranoid thinking . . . .

AND

> B. Resulting in at least two of the following:
>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Marked difficulties in maintaining concentration, persistence, or pace;
>       or
>    4. Repeated episodes of decompensation, each of extended duration . . . .

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04. To meet the Listing under Section 12.06, which

deals with anxiety related disorders, Rawls must show, as relevant here, that he suffered from:

> A. . . . .

> 4. Recurrent severe panic attacks manifested by a sudden unpredictable onset of
>    intense apprehension, fear, terror and sense of impending doom occurring on
>    the average of at least once a week; . . .

AND

B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace;
    or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.06.

In making her determination that Rawls was not disabled, the ALJ relied, *inter alia*, on the following medical evidence in the record: (1) Stephenson's consultative examination in October 2006 that: (a) reported Rawls was experiencing lack of concentration, depression, anxiety, low energy, anhedonia, dysphoric mood, and deficits in memory; (b) diagnosed Rawls with recurrent major depressive disorder and (provisionally) developing agoraphobia; and (c) noted Rawls still managed to meet friends at a coffee house and remain active in AA (Tr. 14-15; *see* Tr. 315-20); (2) progress notes indicating that Rawls experienced intermittent symptoms of depression and anxiety but that such conditions had responded to treatment with medication (Tr. 15; *see* Tr. 236, 238, 240, 248, 253, 268, 403, 509, 511, 530-31); (3) progress notes indicating that Rawls was developing panic attacks and agoraphobia even though evidence did not support Rawls' claims that he was unable to leave his home (*id.*); (4) the fact that, although a psychiatrist summarized Rawls as being treated for major depressive disorder and panic disorder with agoraphobia and asserted that "panic remains disabling," the documented signs or objective findings from the visit indicated that Rawls was not exhibiting any signs showing a disabling level of panic (Tr. 15; *see* Tr. 493); (5) progress notes dated December 2007 indicating that Rawls was demonstrating "learned helplessness," had not tried to work in years, and had no motivation to get a job although he was able to go to clubs to socialize (Tr. 485); (6) July 2008

17

medical source statement by Vu opining that Rawls would have a "good to very good ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, function independently, understand, remember and carry out both simple and detailed (but not complex) job instructions, maintain personal appearance and demonstrate reliability (Tr. 15-16; *see* Tr. 516-18); (7) progress notes dated July 2008 indicating Rawls had a Global Assessment of Functioning ("GAF") score of 60 (Tr. 16; *see* Tr. 531); (8) SAMC White's opinion dated October 12, 2006 that Rawls was capable of performing detailed but not complex tasks and was mildly restricted in his activities of daily living; had mild difficulties in maintaining social functioning; had moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation,[11] each of extended duration (Tr. 16-17; *see* Tr. 331, 337).

In making her determination, the ALJ also considered Alphonso's Medical Source Statement in which Alphonso opined, in essence, that Rawls "would have a 'substantial loss of ability' or even a 'complete loss of ability' to perform the enumerated mental demands of competitive work activity." (Tr. 16.) The ALJ, however, chose to reject Alphonso's opinion for the following reasons: (1) there was no evidence of any treatment history of Rawls by Alphonso; 2) there was no indication of Alphonso's professional qualifications or the bases for her opinion; and (3) Alphonso had rated Rawls' GAF score at 60, which was not consistent with a substantial or complete loss of ability to perform the mental demands of work activity.

---

[11] The Court notes that White actually found that Rawls suffered from one or two episodes of decompensation. (Tr. 331.)

Rawls argues that the evidence from SAMC Stephenson and treating psychiatrist Alphonso shows that Rawls clearly meets the criteria set forth in Sections 12.04 and 12.06 of the Listing. (Pl.'s Br. at 11-15.) Specifically, Rawls states:

> Taken together, these opinions clearly indicate that Mr. Rawls' two severe mental impairments meet the requirements of Listings 12.04 and 12.06. They establish that Mr. Rawls experienced ahedonia, difficulty concentrating or thinking, decreased energy, appetite disturbance, and exhibited poor fine motor control, which are required symptoms of Listing 12.04. The opinions also establish that Mr. Rawls' anxiety disorder caused him to "experience subjective emotional stress in situations many persons would find innocuous" and made him virtually incapable of coping with normal work stresses, "even those inherent in low stress jobs."

(Pl.'s Br. at 15.)

With respect to listings 12.04 and 12.06, even assuming that part A of both listings had been met, substantial evidence supports the ALJ's implicit determination at Step Three that none of the parts of section B had been met under either listing. The ALJ, relying at least partially on SAMC White's opinion, clearly found that Rawls did not suffer from a marked restriction of activities of daily living, marked difficulties in maintaining social functioning, concentration, persistence, or pace, or repeated[12] episodes of decompensation, each of extended duration. SAMCs are considered experts in the Social Security disability program and their opinions may be entitled to great weight if they are supported by the evidence. *See* 20 C.F.R. §§ 404.1527(f); 416.927(f); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, (S.S.A. July 2, 1996). In this case, White's opinion was consistent with other evidence in the record and, thus, it was not error for the ALJ to rely on this opinion at Step Three.

---

[12] Repeated is defined as three episodes within one year, or an average of once every four months, each lasting for at least two weeks. 20 C.F.R. Pt. 4, Subpt. P., App. 1 § 12.00C.4.

As to Stephenson's opinion, the ALJ relied on portions of the opinion but also emphasized that parts of his opinion were not supported by other evidence in the record. As to Alphonso's opinion, even though it may have supported a different finding, the ALJ clearly rejected her opinion.[13] Because there is substantial evidence supporting the ALJ's decision at Step Three, any legal error from the ALJ's failure to identify the specific evidence she relied on in reaching this conclusion was, at most, harmless. Consequently, the ALJ's decision on this issue should be affirmed.

### B. "Special Technique" in Assessing Mental Impairments

Rawls argues that the ALJ erred by failing to follow the "special technique" required pursuant to 20 C.F.R. § 404.1520a in assessing Rawls' mental impairments. *See* 20 C.F.R. § 416.920a. Rawls argues that the regulations require the ALJ to discuss in her decision the "significant history, including examination and laboratory findings, and functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)" and include a specific finding as to the degree of limitation in each of the functional areas. (Pl.'s Br. at 16-17.) Specifically, Rawls claims that three different doctors, White, Vu, and Alphonso, "have each stated that Ms. [sic] Rawls' concentration, persistence, and pace are significantly limited, and these statements are supported by objective medical evidence", including a CT scan of Rawls' brain taken on July 15, 2008 that shows diffuse atrophy of Rawls' brain. (Pl.'s Br. at 17-18.) Rawls argues that the ALJ erred by "completely failing to mention the significance of this evidence" and accuses the ALJ of picking and choosing "only those portions of Dr. Vu's

---

[13] The Court will address the issue of whether the ALJ properly weighed the treating source opinion of Alphonso in section V.C., *infra* at 23.

Medical Source Statement which were supportive of the Judge's finding of non-disability." (Pl.'s Br. at 18.)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). In evaluating mental disorders under the Listing, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00. To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine if it meets or equals a listed mental disorder under Sections 12.00-12.09 of the Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical

findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. §§ 404.1520a(d)(3), 216.920a(d)(3); *see Boyd*, 239 F.3d at 705. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, contrary to Rawls' claims, it is clear that the ALJ did follow the special technique required by 20 C.F.R. § 404.1420a. *See* 20 C.F.R. § 416.920a. To begin with, the ALJ found that Rawls suffered from the severe mental impairments of major depressive disorder and anxiety disorder with agoraphobia but that such impairments did not meet or equal any impairment in the Listing. (Tr. 12-13.) In reaching this conclusion, the ALJ found that Rawls' mental impairments had resulted in mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate deficiencies in concentration, persistence, and pace, and no episodes of decompensation. (Tr. 16-17.) The ALJ then incorporated such findings into her RFC determination by specifically limiting Rawls to jobs that required Rawls to understand, remember, and carry out detailed but not complex instructions and have only incidental interaction with coworkers and the general public. (Tr. 13.) In making these determinations, the ALJ went through the evidence in the record, including the opinions of White, Vu, and Alphonso, and discussed the reasons for her decisions.

Contrary to Rawls' claims, the ALJ did incorporate Rawls' moderate difficulties in maintaining concentration, persistence and pace into the RFC assessment by limiting Rawls to jobs that did not involve complex instructions. In addition, the ALJ is not required to adopt every finding made by every physician as "[t]he ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan,* 925 F.2d 785, 790 (5th Cir.1991) (citing *Bradley v. Bowen,* 809 F.2d 1054, 1057 (5th Cir.1987)). As to Rawls' complaints that the ALJ did not discuss some of the evidence and only "picked and chose" portions of the evidence that supported his positions, the Court notes that an ALJ is not required to explicitly discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation. *See Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir. 1994) ("[t]hat [the ALJ] did not follow formalistic rules in his articulation compromises no aspect of fairness or accuracy that this process is designed to ensure.") Because there is substantial evidence that supports the ALJ's disability determination and the ALJ did properly follow the "special technique" in evaluating Rawls' mental impairments, the Court concludes that remand is not required on this issue.

### C. **Opinions of Treating Physicians**

Rawls argues that the ALJ erred by failing to properly evaluate the medical source opinions of Vu and Alphonso. (Pl.'s Br. at 19.) As to Vu's medical source opinion, Rawls claims that the ALJ violated 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2), SSR 96-2p and SSR 85-15 when she accepted only some but not all of Vu's opinion and failed to provide an explanation "for overlooking Vu's indications that Mr. Rawls' ability to deal with work stresses, maintain concentration or attention, understand complex instructions, behave in an emotionally stable

23

manner, or act appropriately in social situations was more consistent with a sheltered workshop than competitive job placement." (Pl.'s Br. at 20.)

Controlling weight is assigned to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). *See also* 20 C.F.R. §§ 404.1527(e), 416.927(e). When deciding to do so, the ALJ must indicate the specific reasons for discounting the treating source's medical opinion. *See* SSR 96-2p, 1996 WL 374188 (S.S.A. July 2, 1996.) Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See id.*; *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In this case, the ALJ summarized the medical evidence provided by Vu, including the opinions in her July 1, 2008 Medical Source Statement. Contrary to Rawls' argument, the ALJ did acknowledge that Vu opined that Rawls had "fair" work-related limitations in the areas of dealing with work stress, maintaining attention and concentration, behaving in an emotionally stable manner, and relating predictably in social situations. (Tr. 15.) Based upon other evidence in the record (as discussed above) and the fact that Vu also opined that Rawls would have good

24

to very good ability to follow work rules; relate to co-workers; deal with the public; use judgment; interact with supervisors; function independently; understand, remember and carry out simple and detailed but not complex job instructions; maintain personal appearance; and demonstrate reliability, the ALJ found that Rawls would have the RFC to understand, remember and carry out detailed but not complex instructions in jobs not requiring more than incidental interpersonal contact with coworkers and the public. (Tr. 15-16.) The ALJ, in essence, accepted the majority of Vu's opinion and explained that he did not fully adopt certain of Vu's opinions in light of the other evidence in the record.[14] Consequently, she complied with her duties as to Vu's opinions.[15]

As to Alphonso's medical source opinion, Rawls claims, in essence, that the ALJ erred in rejecting the opinion of Alphonso without applying the required factors in 20 C.F.R. § 404.1527(d) and without good cause. *See* 20 C.F.R. § 416.927(d). (Pl.'s Br. at 22-27.) In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria

---

[14] As noted above, the ALJ is not required to explicitly discuss every piece of evidence in the record and state why she rejected or accepted each fact. *See Falco*, 27 F.3d at 164.

[15] As to Rawls' argument that the ALJ failed to comply with SSR 85-15, this ruling provides that "the mentally impaired have difficulty accommodating to the demands of work and worklike settings" and emphasized the "importance of thoroughness in evaluation" of whether a particular claimant can adapt to the demands or stress of the workplace. SSR 85-15, 1985 WL 56857, at *5 (S.S.A.1985). It further states that the basic mental demands of competitive remunerative, unskilled work include, as relevant here, the ability on a sustained basis "to respond appropriately to supervision, coworkers, and usual work situations." *Id.* According to SSR 85-15, a "substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.* Rawls argues that the ALJ should have found him disabled because Vu opined that Rawls' emotional stability and ability to respond appropriately to social situations were consistent with a sheltered work environment but not competitive job placement. (Pl.'s Br. at 21.) However, as discussed above, the ALJ properly considered Vu's opinions and accepted those opinions that were supported by other evidence in the record.

set forth in 20 C.F.R. § 404.1527(d)." *Newton*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original). Under the statutory analysis of 20 C.F.R. § 404.1527(d), the ALJ must evaluate the following: (1) examining relationship, (2) treatment relationship, including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s), (3) supportability, (4) consistency, (5) specialization, and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d); *see also* 20 C.F.R. § 416.927(d); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[16]

In this case, the ALJ rejected the opinion of Alphonso that Rawls had a substantial loss or even a complete loss of ability to perform the enumerated mental demands of competitive work activity. (Tr. 16.) The ALJ specifically provided the following reasons for such rejection: (1) there was no evidence of a longitudinal or any treatment history of Rawls by Alphonso; (2) there was no indication of Alphonso's professional qualifications or the bases for her opinion; and (3) Alphonso rated Rawls' GAF score at 60, which was "certainly not consistent with a substantial or complete loss of ability to perform the mental demands of work activity." (Tr. 16.)

---

[16] Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(d) *only* if there is no other reliable medical evidence from another *treating or examining* physician that *controverts* the treating specialist. *See Newton v. Apfel*, 209 F.3d 448, 455-57 (5th Cir. 2000). An ALJ does *not* have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

In this case, even assuming that the ALJ was required to consider the statutory factors listed in 20 C.F.R., the Court finds that the ALJ did follow the statutory analysis and had good cause for rejecting Alphonso's ultimate opinion that Rawls was, in essence, unable to work. Although the ALJ did not make an explicit finding as to each of the factors in 20 C.F.R. § 404.1527(d), her discussion of Alphonso's opinion shows that she considered each factor in reaching her decision to reject Alphonso's opinion. As to factors one and two, the ALJ reviewed the examining relationship and treatment relationship between Alphonso and Rawls as she stated there was "no evidence of a longitudinal (or any) treatment history of the claimant by Dr. Alphonse [sic]." (Tr. 16.) Rawls claims this is an erroneous statement because there is, in essence, evidence that Alphonso treated Rawls from September 10, 2008 through June 25, 2009 and Alphonso took over Rawls' care at JPS Health Network from Shahidi. (Pl.'s Br. 24-25.) However, a review of the evidence indicates that the ALJ was referring to the fact that Alphonso issued the Medical Assessment on September 10, 2008 describing Rawls as unable to work, the exact same date as Alphonso began treating Rawls. Thus, the ALJ's statement was accurate.

As to factors three, four, and six, the ALJ indicated that she rejected Alphonso's opinion because there was no indication of Alphonso's professional qualifications or the bases for her opinion, and Alphonso's opinion was not consistent with Alphonso's GAF assessment. In addition, Rawls specifically indicated why the ALJ gave SAMC White and Vu's opinions greater weight. (Tr. 15-16.) Because the ALJ did have good cause for rejecting Alphonso's opinion, specified the weight she was attributing to Alphonso's opinion, and went through the factors set forth in 20 C.F.R. § 404.1527(d) before rejecting Alphonso's opinion, the Court concludes that the ALJ did not err. Consequently, remand is not required.

## CONCLUSION

The ALJ's decision is affirmed in all respects.

SIGNED March 2, 2011.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv